**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **JOHN JEFFREY SWEDA,** | : | |
| | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **No. 22-1787** |
| | : | |
| **UPPER BUCKS COUNTY TECHNICAL** | : | |
| **SCHOOL,** *et al.*, | : | |
| | : | |

**Goldberg, J.**                                                                    **August 18, 2023**

## MEMORANDUM OPINION

In this employment discrimination action, Plaintiff John Jeffrey Sweda ("Plaintiff") has sued Defendants Upper Bucks County Technical School ("UBCTS") and former Chairwoman of the UBCTS Joint Operating Committee ("JOC") Megan Banis-Clemens ("Banis-Clemens"), (collectively, "Defendants") for allegedly terminating him in retaliation for protected activity and depriving him of due process. Plaintiff was the Administrative Director of UBCTS for three years before being terminated by the JOC after a series of hearings concerning allegations of impropriety. Plaintiff claims that these allegations were pretextual, that the true reason for his termination was his disagreement with Defendants over UBCTS's COVID-19 masking policy in schools, and that Defendants failed to comply with statutory obligations before terminating his pay and benefits, and later, his employment.

Before me is Defendants' motion to dismiss the Amended Complaint in its entirety. For the following reasons, I find that Plaintiff has plausibly pled claims under the First and Fourteenth Amendments, as well as a claim for wrongful termination.   However, Plaintiff's Pennsylvania Whistleblower law claim and all claims against Defendant Banis-Clemens in her official capacity will be dismissed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

At this stage of the litigation, I am required to analyze Defendants' motion based upon the facts as pled in the Amended Complaint.  When deciding a motion to dismiss for failure to state a claim, I must assume the veracity of all well-pleaded facts found in the complaint.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Upper Bucks County Technical School (UBCTS) is run by a Joint Operating Committee (JOC), the equivalent of a school board, which is comprised of nine members selected from the school boards of three nearby districts.  Plaintiff names as defendants UBCTS and Megan Banis-Clemens, the former Chair of the JOC and elected member of the Pennridge School Board, which contributes members to the JOC. As the Administrative Director of UBCTS, Plaintiff oversaw the secondary and adult education programs and all related staff.  In this position, he reported directly to "Superintendent of Record" Dr. Bridgette O'Connell.  Plaintiff alleges that during his tenure, he received excellent performance evaluations and that his employment contract had been renewed shortly before the events described in the Amended Complaint took place. Plaintiff served as Administrative Director for three years prior to his termination in April 2022. (Am. Compl. ¶¶ 5-6, 8-9, 14-19.)

In August of 2021, in response to the ongoing COVID-19 pandemic, the Bucks County Health Department recommended that local schools observe then-current CDC guidelines by requiring all students and school personnel to wear facemasks, with certain medical exemptions. This recommendation was endorsed by the Bucks County Board of Commissioners in a letter sent to all Bucks County School District Members.  At the time, masking was optional at UBCTS. Plaintiff responded to the Health Department recommendation by proposing to amend the UBCTS

policy to require masking in schools, but this proposal was rejected by the JOC. (Am. Compl. ¶¶ 32-36.)

On August 31st, 2021, the Acting Pennsylvania Secretary of Health signed an Order requiring face coverings to be worn in all schools in the state. (Am. Compl. ¶ 37.)  The Order allowed students to opt out of masking "[i]f wearing a face covering would either cause a medical condition, or exacerbate an existing one, including respiratory issues that impede breathing, a mental health condition or a disability." (Motion to Dismiss, Ex. A at 4, §3(B)).  Pennridge District, of which Defendant Banis-Clemens was an elected member, responded by adopting a policy that permitted parents to exempt their children from the masking requirement under §3(B) without providing supporting medical documentation or a doctor's note. Plaintiff refers to this policy as the "Pennridge model." (Am. Compl. ¶ 41-44.)

Several days later, on September 4th, 2021, Defendant Banis-Clemens, then Vice Chair of the JOC at UBCTS, proposed that UBCTS also adopt the "Pennridge model." Previously, UBCTS followed CDC guidelines and when masking was required, students seeking an exemption had to provide supporting medical documentation and use a face shield in the alternative.  Plaintiff, concerned about the legal and epidemiological consequences of adopting the Pennridge Model, wrote to the Pennsylvania Department of Education to clarify the district's obligations.  Plaintiff does not indicate in the Amended Complaint if he received a response. However, before the JOC could address the issue at a regular board meeting, Defendant Banis-Clemens and JOC Treasurer Christopher Spear ordered Plaintiff to issue a letter to UBCTS families indicating that the district would adopt the Pennridge model. In doing so, the two intimated that they had received the endorsement of then-JOC Chair James Hallowell, which Plaintiff alleges was not true.  Plaintiff declined to author the proposed letter, explaining that he could not do so without a vote of the full

JOC.  UBCTS Solicitor David Conn was consulted and indicated that the letter could be sent with the assent of five board members.   Five members later approved a letter drafted by Defendant Banis-Clemens indicating that UBCTS would adopt the Pennridge model.  Plaintiff then sent the approved letter to UBCTS families. (Am. Compl. ¶¶ 46-53, 58-63.)

Shortly after UBCTS families received the letter, an unnamed person sent Plaintiff a copy of a "harshly worded" letter authored by Acting Pennsylvania Secretary of Education, Noe Ortega. The letter was addressed to an unnamed Pennsylvania school district, not UBCTS, and indicated that compliance with the August 31st, 2021, Order requiring masking in schools was not optional and that legal consequences would follow if the district did not amend its policies to achieve compliance.  Days later, Plaintiff received a state-wide communication from an Acting Deputy Secretary of the Pennsylvania Department of Education indicating that the directives in the August 31st Order were not optional and that "[a]ny school entity simply permitting a parent's sign-off without evidence that the student has a medical or mental health condition or disability that precludes the wearing of a face covering is not in compliance with the Order."  Put simply, the Department of Education communicated that it believed the Pennridge model was unlawful. (Am. Compl. ¶¶ 68-70, 73-75.)

The JOC discussed its masking policy at the next regularly scheduled board meeting on September 16, 2021.  At that meeting, Plaintiff submitted a letter and provided oral testimony opposing the adoption of the Pennridge model at UBCTS.  Defendant Banis-Clemens motioned to adopt the Pennridge model, which passed in a 6-3 vote. (Am. Compl. ¶¶ 77-79, 81-87.)

Roughly seven weeks later, one of Plaintiff's former subordinates submitted a letter to the JOC accusing Plaintiff of "self-dealing."[1]  Plaintiff was suspended without prior notice that same

---

[1]    The parties engage in almost no discussion of the substance of this letter. Defendants claim that its allegations formed the basis of the "Statement of Charges" that preceded Plaintiff's termination, but

day.  It is not clear from the Amended Complaint who suspended Plaintiff or pursuant to what authority, though Plaintiff states that Defendant Banis-Clemens played a role in instigating his suspension by "inventing fictional reasons" as its predicate.  Around this time, the JOC commissioned outside counsel to lead an investigation into the allegations.  UBCTS Human Resources did not conduct its own investigation, and Plaintiff's immediate supervisor was not consulted on the proposed investigation. Plaintiff alleges that the attorneys commissioned for the investigation were "closely associated" with the Pennridge School District, and by extension Defendant Banis-Clemens. (Am. Compl. ¶ 94-96, 98-100, 265).

A five-week investigation ensued. Though not raised in the subordinate's letter, a key subject of the investigation was an alleged extramarital affair between the Plaintiff and an unnamed teacher.  During this period, the August 31st, 2021 Order requiring facemasks in schools was vacated by the Commonwealth Court of Pennsylvania in <u>Corman v. Acting Sec'y of the Pa. Dep't of Health</u>, 267 A.3d 561, 582 (Pa. Commw. Ct. 2021). The decision was appealed to the Pennsylvania Supreme Court, which affirmed the decision on December 10, declaring the August 31st, 2021 Order void *ab initio*. <u>Corman v. Acting Sec'y of the Pa. Dep't of Health</u>, 266 A.3d 452, 487 (Pa. 2021). The JOC also conducted a regularly scheduled reorganization around this time, during which Defendant Banis-Clemens replaced James Hallowell as Chair.  (Am. Compl. ¶¶ 101, 104, 107-10.)

In late December, the JOC concluded its investigation and sent Plaintiff a "Statement of Charges" in advance of a meeting to discuss potential termination proceedings.  Plaintiff alleges that his pay and benefits were suspended at that time without a vote of the JOC, though he does not specify who made the decision.  Plaintiff responded with a motion for reinstatement of pay and

---

the Statement of Charges is left similarly unelaborated upon and was not included as an attachment to either party's submissions. (Am. Compl. ¶ 131-32).

benefits pending a final determination of wrongdoing and, because of the sensitive nature of the allegations, requested a private hearing under the Pennsylvania Public School Code.  In early January, the JOC hosted a public meeting where it voted to proceed to a termination hearing without considering alternative remedies.  Plaintiff's motions were not acted upon and a Statement of Charges, including allegations of sexual impropriety, were published to the public UBCTS website as an attachment to the agenda for the meeting. (Am. Compl. ¶¶ 112-121).

Between January and April of 2022, the JOC held six separate hearings on the subject of Plaintiff's termination.  Plaintiff alleges that local media covered the hearings, in at least one case presenting the issues in a "one-sided" manner.  On April 7th, the JOC voted 8-1 to terminate Plaintiff's employment.  On April 20th, Plaintiff received a written determination from the JOC via certified mail.  The document did not include a statement of predicate factual findings. (Am. Compl. ¶¶ 124, 126-27, 129, 130, 135.)

## II.   STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that

are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, . . . assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220. When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.   DISCUSSION

Plaintiff brings claims under the First and Fourteenth Amendments of the United States Constitution, alleging that Defendants retaliated against him for engaging in protected speech and deprived him of procedural due process throughout his termination proceedings.  Plaintiff also brings state law claims for violations under the Pennsylvania Whistleblower Law ("PWL") and wrongful termination.  Defendants seek dismissal of each of Plaintiff's claims, arguing that Plaintiff has not alleged sufficient facts to demonstrate that his speech was constitutionally protected or that he was deprived of procedural due process. Defendants also contend that Plaintiff's state law claims should be dismissed because he has not sufficiently alleged wrongdoing under the PWL or that his termination was in violation of public policy.  For the foregoing reasons, Defendants' motion to dismiss will be denied in part and granted in part.

### A.   42 U.S.C. § 1983—First Amendment Discrimination (Counts I & II)

Section 1983 provides a remedy for deprivation of rights established in the Constitution or by federal law.  To state a claim under Section 1983, a plaintiff must demonstrate the defendant, acting under color of state law, deprived him of a right secured by the Constitution or the laws of

the United States.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).   Plaintiff alleges Defendants discriminated against him in retaliation for activity protected under the First Amendment.

The First Amendment secures, in relevant part, rights to speech, association, and peaceable assembly. U.S. CONST. Am. I, cl. 2-3. These rights extend to public employees acting within the scope of their employment, though not to the same extent as that enjoyed by the general public. Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). In the context of public employment, the court must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [employer] in promoting the efficiency of the public services it performs through its employees." Id. The United States Supreme Court reasoned that without such limitations, public employee speech may interfere with efficient provision of essential public services. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). Thus, a public employee's First Amendment rights are curtailed only when otherwise protected speech would interfere with the efficiency or efficacy of the public workplace. Id. at 419.

The Third Circuit has developed a two-pronged test to determine if a public employee has made out a *prima facie* claim of retaliation in violation of the First Amendment. Fenico v. City of Phila., 70 F.4th 151, 162 (3d Cir. 2023).   First, the court must consider whether the plaintiff's conduct was constitutionally protected. Id.; Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007). If so, the court must then determine whether the protected activity was a substantial or motivating factor in the employment decision. Fenico, 70 F.4th at 162; Galli, 490 F.3d at 271; Garcetti, 547 U.S. at 418. If both elements are present, the defendant-public employer may respond by demonstrating that its interest in avoiding disruption to its operations outweighed the employee's interest in speaking.  Fenico, 70 F.4th at 162.

1.      *The Scope of Constitutionally Protected Conduct*

First, I must consider whether the speech at issue was constitutionally protected. For speech to be constitutionally protected, the public employee must have spoken: (1) on a matter of public concern; and (2) as a private citizen rather than in their official capacity. Borough of Duryea v. Guarnieri, 564 U.S. 379, 386 (2011); Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty., 39 F.4th 95, 103-04 (3d Cir. 2022).

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick v. Meyers, 461 U.S. 138, 147-48 (1983). "Speech involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" Lane v. Franks, 573 U.S. 228, 241 (2014) (quoting Snyder v. Phelps, 562 U.S. 443, 453 (2011)).

Here, Plaintiff alleges that Defendants terminated his employment in retaliation for his vocal opposition to the Pennridge model. (Am. Compl. ¶ 169-70). His alleged speech includes his communications with the Pennsylvania Department of Education and his oral and written statements at the September 2021 JOC board meeting. (Id. ¶¶ 49, 77-82, 84). School masking policy was a contentious issue at the time in question and was subject to extensive public comment and news coverage. Viewed in the light most favorable to the nonmovant, Plaintiff has plausibly alleged that school masking policy was a matter of public concern. Amalgamated Transit Union Loc. 85, 39 F.4th at 103-04 (mask-mandates are a matter of public concern).

The second sub-element asks if the speech at issue was made by the speaker as a private citizen or within their official capacity as a public employee. Borough of Duryea, 564 U.S. at 386.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 547 U.S. at 418. "The critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Lane, 573 U.S. at 240.  The analysis will "var[y] with each case's circumstances," and the Third Circuit has cautioned against relying on "simple tests" to determine whether a plaintiff was speaking as a private citizen or as a public employee.  Brown v. City of Philadelphia, 541 F. Supp. 3d 605, 631 (E.D. Pa. 2021) (quoting De Ritis v. McGarrigle, 861 F.3d 444, 454 (3d Cir. 2017)).   Courts in this Circuit have considered several factors, including: "(1) whether the speech of the employee relates to special knowledge or experience acquired through the job; (2) whether the employee raises complaints or concerns about issues relating to their job duties up the chain of command at their workplace; (3) whether the speech falls within the employee's designated responsibilities; and (4) whether the employee's speech is in furtherance of his designated duties, even if the speech at issue is not part of them." Zucal v. Cnty. of Lehigh, 2023 WL 2432485, at *5 (E.D. Pa. Mar. 8, 2023) (citations omitted) (quoting Kimmett v. Corbett, 554 Fed. Appx. 106, 111 (3d Cir. 2014)).  Another pertinent consideration is "whether there is a relevant analogue to the speech by citizens who are not government employees[.]" Brown, 541 F. Supp. 3d at 631.

Plaintiff alleges that he addressed the JOC at a public, regularly scheduled board meeting by submitting a written statement and making oral comments opposing the proposed masking policy. (Am. Compl. ¶¶ 77-84).  Plaintiff did not need to rely on specialized knowledge or experience acquired as Administrative Director of UCBTS to form his opinion on the proposed policy.  Similar conversations about whether students should be required to wear masks in school

were taking place across the country at that time with parents, students, teachers, and administrators sharing a wide variety of perspectives based on their everyday experience.  Plaintiff did note in his letter to the JOC that the Pennsylvania Department of Education had clarified that mask-optional policies were prohibited, and this aspect of his argument was based on his specialized knowledge as a school administrator who had received guidance from that entity.  However, he also cited his general concerns about the safety and wellbeing of his students and faculty.  (Am. Compl. ¶ 89).  Furthermore, his primary basis for opposing the proposed policy was that it violated the Secretary of Health's Order requiring masks in school, and that Order was publicly available on the Department of Health's website.  Taking the totality of Plaintiff's speech into consideration, I find that at this stage of the litigation, this factor weighs in favor of Plaintiff.

With respect to the second factor, "[c]omplaints made by public employees up the chain of command fall within their official capacity if the complaints concern their duties in the workplace." Zucal, 2023 WL 2432485 at *7.  However, complaints made outside of an employee's normal chain of command are typically seen as private citizen speech rather than employee speech.  Id. (citing Tayoun v. City of Pittston, 39 F. Supp. 3d 572, 579 (M.D. Pa. 2014) (police chief spoke as a private citizen when he reported finding illicit photographs on a police department computer to the Pennsylvania Attorney General because the Attorney General was an "unaffiliated entity outside his normal chain of command.").

Here, Plaintiff alleges that as Administrative Director at UBCTS, he reported directly to the "Superintendent of Record," Bridgette O'Connell.  While one of his job responsibilities was to implement policies established by the JOC, he does not allege that the JOC was within his "chain of command" for purposes of making complaints.  Moreover, Plaintiff explicitly pleads that the Pennsylvania Department of Education was not in his chain of command.  (Am. Compl. ¶ 174).

Thus, this factor weighs in favor of finding that Plaintiff's speech was made as a private citizen rather than a public employee.

The United States Supreme Court has stated that the "critical" question is whether the speech was "within the scope of the employee's duties." Lane, 573 U.S. at 240.  As Administrative Director of UBCTS, Plaintiff alleges his duties were "to direct the functions of the school in accordance with the policies established by the JOC" and that he "had no responsibility to develop policy, which was the responsibility of the JOC." (Am. Compl. ¶¶ 8-9). This plausibly suggests that his statements opposing the policy were made outside of his official capacity as a UBCTS administrative official. See Lane, 573 U.S. at 240.  According to the Amended Complaint, Plaintiff was responsible for implementing policies that had already been considered and adopted by the JOC.  It was thus not within the scope of his employment to participate in the development of those policies.

Defendants respond that Plaintiff's failure to announce his intention to speak as a private citizen is dispositive on the matter, (Def.'s Mot. at ¶ 12-13), but the law does not require such a declaration.  It is sufficient at this stage of the litigation that Plaintiff alleges his speech concerned the JOC's potential adoption of a masking policy, and his employment responsibilities did not include development or approval of such a policy.  Matthews v. City of New York, 779 F.3d 167, 174 (2d Cir. 2015) ("when a public employee whose duties do not involve formulating, implementing, or providing feedback on a policy that implicates a matter of public concern engages in speech concerning that policy, and does so in a manner in which ordinary citizens would be expected to engage, he or she speaks as a citizen, not as a public employee.").[2]

---

[2]      Plaintiff opens his letter to the JOC by stating "[i]t is my recommendation . . . as the Executive Director of the Upper Bucks County Technical School to follow and enforce the Pennsylvania's Acting Secretary of Health Order requiring face coverings to be worn in all school entities."  (Am. Compl. ¶ 78.) This invocation of his formal title could transform this particular form of communication into employee

Lastly, I note that here, there is a "relevant analogue to the speech by citizens who are not government employees." Brown, 541 F. Supp. 3d at 631.   Plaintiff alleges that the meeting in which he verbally opposed the proposed policy was a public, regularly scheduled school board meeting.   Parents and community members often attend public school board meetings to provide comments about policies the board is considering.   Thus, there is a civilian analogue to the speech Plaintiff engaged in.   This is also true for the letter Plaintiff sent to the Pennsylvania Department of Education, as this method of communication is also available to ordinary citizens.   For the foregoing reasons, Plaintiff has plausibly alleged that he spoke as a private citizen on a matter of public concern.

I find that Plaintiff has plausibly pled that his speech was constitutionally protected, and thus, the first element of his First Amendment retaliation claim is satisfied.

2.      *Substantial or Motivating Factor in the Adverse Employment Outcome*

The second element of the First Amendment analysis concerns whether the plaintiff's protected activity was a substantial or motivating factor in the adverse employment action. Garcetti, 547 U.S. at 418; Galli, 490 F.3d at 271. This prong also has two sub-elements concerning (i) knowledge of the protected activity on the part of the defendants and (ii) a causal connection between the protected activity and the adverse employment outcome. Galli, 490 F.3d at 275. Here, Plaintiff plausibly alleges that Defendants had knowledge of his protected speech, as much of the speech in the Amended Complaint involved statements made directly to Defendants. (Am. Compl. ¶¶ 51-58, 77-84.)

---

speech.  However, he has alleged other forms of speech, such as his letter to the Pennsylvania Department of Education, and his verbal comments at the board meeting, that he made as a private citizen.  Development of the factual record is required before it can be determined exactly which forms of alleged speech warrant protection.  However, dismissal of Plaintiff's claim on that basis at this stage would not be appropriate.

I next determine if Plaintiff has pled causation. Suggestive timing or temporal proximity can indicate a causal link between protected conduct and an allegedly retaliatory action. Ambrose v. Twp. of Robinson, 303 F.3d 388, 494 (3d Cir. 2002). When the temporal proximity of two events is "not so close as to be unduly suggestive," circumstantial evidence, such as a pattern of antagonism, may allow an inference of causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). However, an employee may also create an inference of causation by other means, such as "showing that the employer gave inconsistent reasons for terminating the employee." Id. at 280-81. Finally, under the "cat's paw" doctrine, an employer-decision-maker may be held liable for the discriminatory animus of a non-decisionmaker if a discriminatory action by the non-decisionmaker was the proximate cause of plaintiff's adverse employment outcome. Staub v. Proctor Hosp., 562 U.S. 411, 418-19 (2011); McKenna v. City of Phila., 649 F.3d 171, 177 (3d Cir. 2011).

Plaintiff describes three instances of protected speech followed by an adverse employment action seven weeks later. (Am. Compl. ¶¶ 76-84, 99). While a separation of nearly two months may not qualify as "unduly suggestive" timing, Plaintiff alleges other facts that could be construed as a "pattern of antagonism," including his being suspended immediately upon receipt of a complaint letter from a former subordinate; having his pay and benefits suspended without prior notice or a vote of the JOC; the JOC's failure to consult human resources or Plaintiff's immediate supervisor about allegations of impropriety; publication of sensitive allegations about Plaintiff that had not yet been proven; and the JOC's permitting public access to a series of hearings concerning the same sensitive allegations. (Id. ¶¶ 94-104, 114, 118-26).

Further, while Plaintiff does not allege that Defendants offered inconsistent or conflicting justifications for his termination, he does allege that Defendants did not terminate him pursuant to

an exclusive list of statutory causes and that Defendants did not state predicate factual findings for his termination. (Am. Compl. ¶ 130-35, 272-73). Notably, in their motion to dismiss, Defendants did not provide any argument or supporting documentation to refute these allegations. Finally, while Plaintiff's allegations concern discriminatory animus only by Defendant Banis-Clemens, he alleges that Defendant Banis-Clemens' influence over the other JOC members, first as Vice Chair and later as Chair of the JOC, makes her alleged animus a substantial or motivating factor in his termination. (Am. Compl. ¶¶ 15, 55, 110). Viewing all of these facts together in the light most favorable to Plaintiff, I conclude he has plausibly alleged a causal connection between his protected conduct and his termination.

### 3.  Employer's Interest in Workplace Efficiency

A public employee may be terminated for otherwise constitutionally protected activity if the employee's speech rights are outweighed by the employer's interest in workplace efficiency. Pickering, 391 U.S. at 568. The public employer bears the burden of demonstrating that such a restriction on speech is warranted, but the weight of this burden varies with the nature of the employee's expression. Connick, 461 U.S. at 150; Galli, 490 F.3d at 271.  Courts engage in a balancing test between the interests of the individual in constitutional expression and the interests of the employer in promoting efficiency. Garcetti, 547 U.S. at 417. Government employers' interest in workplace efficiency necessarily limits the speech rights of public employees. Borough of Duryea, 564 U.S. at 386-87. Thus, if a public employee's otherwise protected expression would interfere with the discharge of their duties or those the employer, their rights may yield to the public interest. Branti v. Finkel, 445 U.S. 507, 517 (1980).

Here, Plaintiff does not allege facts that would suggest that his protected activity interfered with the execution of his duties or the discharge of the functions of UBCTS or the JOC. The

15

Amended Complaint indicates that Plaintiff communicated with the Department of Education and the JOC in an orderly and respectful manner, the way an ordinary citizen would.  Moreover, even after his initial disagreement with Defendant Banis-Clemens concerning the proposed letter to UBCTS parents on masking policy, Plaintiff claims that he ultimately complied and sent the letter despite his belief that it was unlawful. (Am. Compl. ¶ 67.)  Defendants do not dispute any of the above alleged facts. And Defendants have not articulated how their interest in maintaining workplace efficiency justified their restrictions on Plaintiff's speech.  Accordingly, Defendants have failed to demonstrate that their interest in avoiding workplace disruption outweighed Plaintiff's interest in speaking on a matter of public concern.

In sum, viewed in his favor, Plaintiff plausibly alleges that his speech: (1) warrants constitutional protection, and (2) was a substantial or motivating factor in his suspension and termination. And Defendants have not shown that they had an adequate justification for limiting his speech. Plaintiff has thus plausibly stated a claim of employment discrimination in violation of his First Amendment rights, and Defendants' motion to dismiss that claim is denied.

**B.      42 U.S.C. § 1983—Deprivation of Procedural Due Process Under the Fourteenth Amendment (Count III)**

The Fourteenth Amendment guarantees procedural due process protections for property interests established by independent sources of law. Bd. of Regents v. Roth, 408 U.S. 564, 576-77 (1972). When a public employee's terms of appointment establish "more than a unilateral expectation" of continued employment, either by contract, the employer's rules, or by statute, the employee has a property interest in continued employment. Id. at 577-78. A property interest triggering procedural due process protections may come from the policies or governing statutes of a public institution. See, Perry v. Sindermann, 408 U.S. 593, 599-600 (1972). However, once a property interest is established, a question remains of how much or what process is due. Mosley v.

City of Pittsburgh Pub. Sch. Dist., 702 F. Supp. 2d 561, 574 (W.D. Pa. 2010) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)).

Under Pennsylvania law, any deviation from the procedures required by the Public School Code, 24 Pa. Stat. Ann. § 11-1121 et seq., ("the School Code") constitutes a deprivation of due process. Neshaminy Sch. Dist. v. Neshaminy Fed'n of Tchrs., 84 A.3d 391, 397 (Pa. Commw. Ct. 2014).   Pennsylvania public school teachers' property interest in continued employment is established by the Public School Code, which enumerates an exclusive list of permissible causes for termination. Id. The School Code also grants covered employees the right to a private termination hearing upon request and lays out the procedures required prior to termination. §§ 11-1126 -1129. Prior to dismissal, an employee must: (1) be shown to have engaged in conduct covered by § 11-1122(a); and (2) receive (i) a written statement of charges and notice to appear, (ii) an opportunity to be heard in person or by counsel at a transcribed meeting, and (iii) a ruling by two-thirds of the presiding body after full, impartial, and unbiased consideration of the charges. Vladimirinsky v. Sch. Dist. of Phila., 144 A.3d 986, 993-94 (Pa. Commw. Ct. 2016). These pretermination rights extend to public employees suspended without pay under a presumption of future termination. Gniotek v. Philadelphia, 808 F.2d 241, 243-44 (3d Cir. 1986); see also, Vladimirinsky, 144 A.3d at 994-95, 997-98; Sch. Dist. of Phila. v. Jones, 139 A.3d 358, 369 (Pa. Commw. Ct. 2016); Moffitt v. Tunkhannock Area Sch. Dist., No. 13-cv-1519, 2013 U.S. Dist. LEXIS 181603, at *13 (M.D. Pa. Dec. 31, 2013).

Defendants concede that Plaintiff was an employee covered by the School Code.  This establishes Plaintiff's property interest in continued employment and right to statutory and constitutional procedural due process protections. Roth, 408 U.S. at 576-77.  As to the specific process due, Plaintiff points to three sperate bases for his claim.

First, Plaintiff contends that he was deprived of his right to a private termination hearing. Section 11-1126 of the School Code states that "[a]ll hearings, under the provisions of this article or any other provision of the school laws pertaining to the dismissal or the termination of contracts of professional employees, shall be public, unless otherwise requested by the party against whom the complaint is made." Plaintiff alleges that he requested a private hearing, that his request was not granted, and that a series of public hearings commenced. (Am. Compl. ¶ 127, 187-88). "A deviation from [School Code] procedures constitutes a denial of due process." Vladimirinsky, 144 A.3d at 997 (quoting Neshaminy, 84 A.3d at 397). Accordingly, Plaintiff has adequately pled that he was deprived of his due process right to a private hearing upon request.

Second, Plaintiff claims that Defendants violated his right to receive full pay and benefits pending a final determination by the JOC of terminable wrongdoing pursuant to § 11-1122. (Am. Complaint at ¶ 189-90). Prior to termination, employees covered by the School Code have a right to receive (i) a statement of charges and evidence; (ii) an opportunity to be heard; and (iii) an unbiased ruling on the allegations, prior to the adverse action. Vladimirinsky, 144 A.3d at 993-94. These protections extend to covered employees suspended without pay with the expectation of later termination. Gniotek, 808 F.2d at 243-44. Plaintiff alleges that his pay and benefits were terminated after receipt of a statement of charges and evidence, but prior to an opportunity to be heard or a final determination on the allegations, and that remedies other than termination were not considered. (Am. Compl. ¶¶ 112, 114, 118-19, 124, 126-27, 129). Accordingly, Plaintiff has adequately pled a due process violation based on the suspension of his pay before he was given an opportunity to be heard.

Lastly, Plaintiff claims that his termination was in violation of the School Code because it was not effectuated pursuant to one of the enumerated grounds for termination under the statute.

(Am. Compl. ¶ 180-85). Section 1122 of the School Code enumerates the exclusive reasons for which a tenured employee may be terminated. Plaintiff acknowledges that the JOC cited § 1122 in their termination of his employment but alleges that the written final determination he received did not include predicate factual findings, and that his conduct did not rise to the level of wrongdoing required by § 1122. (Am. Compl. ¶¶ 11, 130-32, 135, 223, 231, 285.)  Defendants do not contest this point and do not offer clarification as to which grounds Plaintiff was terminated under.  Thus, based on my review of the Amended Complaint, Plaintiff has sufficiently pled that his termination did not rise to the level of wrongdoing required under 24 Pa. Stat. Ann. § 11-1122.

Accordingly, Plaintiff has adequately pled that he was deprived of due process when the JOC allegedly: (1) denied his request for a private hearing, (2) revoked his pay and benefits without affording all procedures required under 24 Pa. Stat. Ann. § 11-1126 et seq., and (3) terminated his employment without sufficient justification under § 11-1122.[3]

### C.   Pennsylvania Whistleblower Law (43 Pa. Stat. Ann. § 1421 *et seq.*)— Retaliatory Termination (Count IV)

Under the PWL, an employer may not discharge or retaliate against an employee for making a good faith report of an instance of waste or wrongdoing by a public body to an appropriate authority. 43 Pa. Stat. Ann. §§ 1422-1423. The primary element at issue here is whether Plaintiff has adequately pled either waste or wrongdoing. "Waste" is defined as "[a]n employer's conduct or omission which results in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." § 1422. "A report of hypothetical loss is insufficient to trigger the Whistleblower Law's protection."

---

[3]      In their motion to dismiss, Defendants argue that Plaintiff has failed to plead a substantive due process claim.  Plaintiff does not bring a substantive due process claim in the Amended Complaint, so I will not address those arguments.

Sukenik v. Twp. of Elizabeth, 131 A.3d 550, 559 (Pa. Commw. Ct. 2016) (citing Anderson v. Board of School Directors of Millcreek Township School District, 574 Fed. Appx. 169, 173-74 (3d Cir. 2014)). Plaintiff alleges that Defendant UBCTS engaged in "waste" by failing to follow state and federal regulatory guidelines and risking a "claw back" of federal funds. (Am. Compl. ¶ 92.) Because Plaintiff does not allege that any public funding was actually lost, destroyed, or in some way misappropriated, and because the potential of future loss is not sufficient to plausibly allege waste under the PWL, Sukenik, 131 A.3d at 559, Plaintiff has not sufficiently pled that he reported "waste."

"Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." § 1422. In other words, "to prove a violation of the Whistleblower Law, [a plaintiff] must demonstrate [that they] made a report of some action by [their] employer or its agent, which, if proven, would constitute a violation of a law or regulation." Greco v. Myers Coach Lines, Inc., 199 A.3d 426, 434 (Pa. Super. Ct. 2018). This test is objective: it is not sufficient that a plaintiff subjectively believes or believed that a public entity engaged in wrongdoing. Id. at 433 (quoting Sukenik, 131 A.3d at 555-56). In order to establish wrongdoing for the purposes of the PWL under a regulatory scheme, the alleged wrongdoing must violate specifically proscribed conduct or an administratively defined legal duty. See, Sukenik, 131 A.3d at 557.

Plaintiff alleges that Defendant UBCTS engaged in wrongdoing by knowingly violating CDC and Department of Education regulations and policies. (Am. Compl. ¶¶ 23, 30, 46, 79-88.) He alleges that Defendants were obligated to comply with then current CDC guidance "to the greatest extent practicable" under the August 31st Order and that the Pennridge model did not meet

this obligation because it allowed parents to opt their children out of masking requirements under a medical exemption without supporting medical documentation.  For support, Plaintiff points to Department of Education communications and policies which suggested legal action could have been taken against UBCTS if it did not comply with the August 31st Order.  However, as Defendants point out, the August 31st Order was declared void *ab initio* by the Pennsylvania Supreme Court. <u>Corman</u>, 266 A.3d at 487. "The doctrine of void *ab initio* is a legal theory stating that a statute [or regulation] held unconstitutional is void in its entirety and is treated as if it had never existed." <u>McLaughlin v. Forty Fort Borough</u>, 64 F. Supp. 3d 631, 640 (M.D. Pa. 2014); <u>see</u>, <u>Gladstone Partners, LP v. E. Union Twp.</u>, 26 A.3d 542, 547 n.6 (Pa. Commw. Ct. 2011).  Therefore, Plaintiff cannot base his PWL claim on a failure to comply with the August 31st Order as constituting wrongdoing.[4]

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's PWL claim will be granted.

### D.     Wrongful Termination Contrary to Public Policy (Counts V, VI & VII)

Employment in Pennsylvania is presumed to be at-will. <u>McLaughlin v. Gastrointestinal Specialists, Inc.</u>, 750 A.2d 283, 286 (Pa. 2000). An employee in Pennsylvania can therefore be terminated for "any or no reason." <u>Raines v. Gaverford College</u>, 849 F. Supp. 1009, 1011 (E.D. Pa. 1994) (citing <u>Ruzicki v. Catholic Cemeteries, Inc.</u>, 640 A.2d 495, 497 (Pa. 1992)). An exception to this rule exists, however, when the termination violates public policy. <u>Tanay v. Encore Healthcare, LLC</u>, 810 F. Supp. 2d 734, 737 (E.D. Pa. 2011). The public policy exception to the at-

---

[4]      While Plaintiff alternatively alludes to legal obligations arising under the Disease Control and Prevention Law of 1955, 35. Pa. Stat. Ann. §521 <u>et seq</u>. ("DCPL") and various other federal regulations, (Am. Compl. ¶¶ 64, 70, 80, 204), it is unclear exactly how Defendants' conduct under these regulations constituted wrongdoing because the allegations are too vague and nonspecific.

will employment rule has been applied by courts when an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; or (3) discharges an employee when specifically prohibited from doing so by statute. Id. "To state a cause of action under the public policy exception to the at-will employment doctrine, a plaintiff must point to a 'clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision.'" Id. (quoting Hunger v. Grand Cent. Sanitation, 670 A.2d 173, 175 (Pa. Super. 1996)).

Plaintiff alleges that his termination violated § 11-1122 of the School Code because he was not terminated pursuant to one of the enumerated grounds listed in the statute. (Am. Compl. ¶ 134.) It is contrary to public policy to discharge an employee when specifically prevented from doing so by statute. Tanay, 810 F. Supp. at 737. As explained above, § 11-1122 enumerates an exclusive list of permissible causes for termination of tenured employees. Termination for any other reason would violate the statute. Plaintiff has therefore plausibly alleged that he was wrongfully terminated in violation of public policy and Defendants' motion to dismiss Count VII is denied.[5]

### E.   Official Capacity Claims

Lastly, Plaintiff makes several claims against Defendant Banis-Clemens in her official capacity as Chair of the JOC. (Am. Compl. ¶ 260 et seq.) "In a suit against a government official

---

[5]   Plaintiff also alleges that Defendant UBCTS ordered him to commit a criminal offense by acting in his official capacity to administer a policy contrary to the August 31st Order, which he understood to impose legal obligations upon him as a public school official. However, as discussed above, the August 31st Order was declared void *ab initio* by the Pennsylvania Supreme Court. Corman, 266 A.3d at 487; *Supra*, § III(C). As such, Plaintiff cannot claim to have been terminated for declining to commit a crime or breach a legal duty arising under the August 31st Order.

In Count V, Plaintiff alternatively claims that Defendants attempted to compel him to violate legal duties arising under the DPCL and/or federal regulations. But as explained above, these allegations are too vague to plausibly state a claim. As such, Plaintiff cannot base his wrongful termination claim on either of these arguments.

in his or her official capacity, 'the real party in interest . . . is the government entity and not the named official.'" <u>Montanye v. Wissachickon Sch. Dist.</u>, No. 02-cv-8537, 2003 U.S. Dist. LEXIS 15570, at *17 (E.D. Pa. Aug. 11, 2003) (quoting <u>Hafer v. Melo</u>, 502 U.S. 21 (1991)). "Official capacity suits cannot be maintained against state actors in their official capacity on behalf of the state because state officers sued for damages in their official capacity are not 'persons' under § 1983; rather, they assume the identity of the government that employs them." <u>Morris v. Phila. Hous. Auth.</u>, No. 10-cv-5431, 2011 U.S. Dist. LEXIS 84270, at *41 (E.D. Pa. July 29, 2011) (citations omitted).

A long line of cases has affirmed that in § 1983 suits, when one or more public employees are named in their official capacities along with their employer, any claim against the employee that is duplicative of claims against the employer is appropriately dismissed. <u>See</u>, <u>Gregory v. Chehi</u>, 843 F.2d 111, 120 (3d Cir. 1988) (holding that § 1983 claims against the individual defendants in their official capacities were merely duplications of claims against the Township itself); <u>Montanye</u>, 2003 U.S. Dist. LEXIS 15570, at *17 (dismissing claims against a superintendent and several school board members in their official capacities as duplicative of claims against named school district); <u>Damiano v. Scranton Sch. Dist.</u>, 135 F. Supp. 3d 255, 268 (M.D. Pa. 2015) (dismissing § 1983 claims against school board members as "redundant"); <u>Judge v. Shikellamy Sch. Dist.</u>, 135 F. Supp. 3d 284, 300-301 (M.D. Pa. 2015) (dismissing claims against school board members in their official but not their individual capacities). This principle extends to claims arising under state law. <u>Gilyard v. Dusak</u>, No. 16-2986, 2016 U.S. Dist. LEXIS 137429, at *10 (E.D. Pa. Oct. 4, 2016) (dismissing Pennsylvania Whistleblower Law claim against police commissioner in his official capacity as duplicative of a similar claim against the city).

Accordingly, all claims against Defendant Banis-Clemens in her official capacity will dismissed.

**IV.     CONCLUSION**

For the foregoing reasons, I will grant in part and deny in part Defendants' motion to dismiss. An appropriate Order follows.